**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444; (213) 252-0091 facsimile
E-mail: manncooklaw@gmail.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNIE A. CARDINALE, an individual, | Case No. 2:20-cv-1325-MCE-CKD |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| XAVIER BECERRA, an individual sued in his official capacity only; SCOTT R. JONES, an individual sued in his official and individual capacities; COUNTY OF SACRAMENTO, a governmental entity; SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, a public entity; CLINTON ROBINSON (#305), an individual sued in his official and individual capacities; and Does 1 through 20, all sued in their individual capacities, | Date: Thursday, 7/13/23 Time: 10:00 a.m. Ctrm: 7 |
| Defendants. | |

TO THE HON. MORRISON C. ENGLAND, JR., SENIOR UNITED STATES DISTRICT JUDGE, DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on Thursday, July 13, 2023, at 10:00 a.m., or as soon thereafter as the parties may be heard in Courtroom 7 of the Robert T. Matsui United States Courthouse, located at 501 I Street, Sacramento, California, Plaintiff will move the Court for an order granting partial summary judgment as follows:

-1-

1    1. No triable issue of material fact exists with respect to Plaintiff's claim that the

2 December 25, 2019 seizure of Plaintiff's long guns violated the Second and Fourth

3 Amendments in that the seizure violated both Amendments;

4    2. No triable issue of material fact exists with respect to Plaintiff's claim that the

5 warrant which issued December 26, 2019 (Exhibit F to ECF 45-2) violated the Fourth

6 Amendment in that:

7    A. The warrant was overbroad in its authorization to search "any vehicle"

8 on the premises;

9    B. The warrant was overbroad in its authorization to search for and seize all

10 "Items related to firearms" (item no. 2);

11    C. The warrant was overbroad in its authorization to search for and seize all

12 "Any and all financial documents tending to establish if the motive for the

13 attempted homicide was for financial gain" (item no. 4);

14    D. The warrant was overbroad in its authorization to search for and seize

15 "Items of personal property tending to establish the identity of persons in control

16 of the premises" (item no. 6);

17    E. The warrant was overbroad in its authorization to search for and seize

18 "Telephone directories, address books, calendars and documents with names and

19 addresses" (item no. 7);

20    F. The warrant was overbroad in its authorization to search for and seize

21 "Digital storage devices" (item no. 8);

22    G. The warrant was overbroad in its authorization to search for and seize

23 "Wireless electronic devices / cellular telephone and cellular telephone

24 accessories" (item no. 9);

25    H. The warrant was overbroad in its authorization to search for and seize

26 "Any and all locked safes, locked boxes, chests, etc., which could contain evidence

27 related to the shooting" (item no. 10); and

28    I. The warrant was overbroad in its authorization to search for and seize

00153529.WPD

"Any and all illegal narcotics and prescription narcotics within the confines of the residence" (item no. 11).

3. No triable issue of material fact exists with respect to Plaintiff's claim that the December 26, 2019 seizure of Plaintiff's two handguns locked in her safe, violated the Second and Fourth Amendments in that the seizure violated both Amendments;

4. No triable issue of material fact exists with respect to Plaintiffs' claim that the County of Sacramento and Sacramento County Sheriff's Department's refusal, beginning in March 2020 and continuing up until June 22, 2021, to release to Plaintiff her firearms seized December 25 and 26, 2019, in that as a matter of law the refusal violated both the Second and Fourth Amendment;

5. The above described constitutional violations were pursuant to a custom, policy and/or practice of the County of Sacramento and Sacramento County Sheriff's Department; and

6. Defendants County of Sacramento and Sacramento County Sheriff's Department are liable as a matter of law for all damages proximately caused by the above-described constitutional violations.

This motion will be pursuant to Rule 56(a), Federal Rules of Civil Procedure, and based upon this Notice, the accompanying Memorandum of Points and Authorities, the separately filed "Plaintiff's Separate Statement of Undisputed Facts" (ECF 45-1), "Declaration of Donald W. Cook in Support of Plaintiff's Motion for Partial Summary Judgment" and Exhibits thereto (ECF 45-2), the papers and pleadings on file on this action, and upon such other and further evidence and argument as the Court deems necessary or convenient.

DATED: June 2, 2022

**DONALD W. COOK**
Attorney for Plaintiff

By _____
                Donald W. Cook

00153529.WPD

TABLE OF CONTENTS

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    Overview and Relief Requested. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.   Undisputed Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A. Christmas Day. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    B. The Day After Christmas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    C. Subsequent Events And Defendants' Refusal To Release The Firearms. . . 12

III.  The December 25 Seizure Of Plaintiff's Long Guns Violated The Second and
    Fourth Amendments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.  The December 26 Warrant Was Overbroad In Violation Of
    The Fourth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    A. Overbreadth - The Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    B. The Warrant Was Overbroad. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.    Defendants' Refusal For Over A Year To Return To Plaintiff Her Firearms
    Violated Both The Second And Fourth Amendments. . . . . . . . . . . . . . . . . . . 17

VI.  The Entity Defendants Are Liable For The Constitutional Violations. . . . . . . 20

VII. Defendants Are Liable For All Damages Proximately Caused By Their
    Constitutional Violations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VIII. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

00153529.WPD

1

Table of Authorities

Page(s)

2

***Cases***

3

*Bravo v. City of Santa Maria,*
 665 F.3d 1076 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

4

5

*Brewster v. Beck,*
 859 F.3d 1194 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

6

7

*Caniglia v. Strom,*
 ___ U.S. ___, 141 S.Ct. 1596 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8

*Chew v. Gates,*
 27 F.3d 1432 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

9

10

*City of Los Angeles v. Patel,*
 576 U.S. 409 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11

12

*District of Columbia v. Heller,*
 554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

13

*Estate of Millender v. County of Los Angeles,*
 2012 WL 3655515 (C.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

14

15

*Fairley v. Luman,*
 281 F.3d 913 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

16

17

*Frein v. Pennsylvania State Police,*
 47 F.4th 247 (3rd Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18

*Illinois v. Andreas,*
 463 U.S. 765 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

19

20

*In re Grand Jury Supoenas Dated Dec. 10, 1987,*
 926 F.2d 847 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

21

22

*Jackson v. Gates,*
 975 F.2d 648 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

23

*Lee v. City of Los Angeles,*
 250 F.3d 668 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

24

25

*McDonald v. City of Chicago,*
 561 U.S. 742 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

26

*Messerschmidt v. Millender,*
 565 U.S. 535 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

27

28

00153529.WPD

*Millender v. County of Los Angeles,*
    620 F.3d 1016 (9th Cir. 2010) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Miranda v. City of Cornelius,*
    429 F.3d 858 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Monell v. New York Dept. Of Soc. Servs.,*
    436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
    ___ U.S. ___, 142 S.Ct. 2111 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Oviatt v. Pearce,*
    954 F.2d 1470 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Snitko v. United States,*
    2021 WL 3139706 (C.D. Cal. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Cervantes,*
    703 F.3d 1135 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Hawkins,*
    249 F.3d 867 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Spilotro,*
    800 F.2d 959 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Sutton,*
    794 F.2d 1415 (9th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Constitution / Statutes / Rules of Court**

Cal. Evid. Code § 637 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cal. Evid. Code § 638 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cal. Pen. Code § 148 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Pen. Code § 245 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Pen. Code § 29800 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Pen. Code § 33850 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Pen. Code § 33865 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Pen. Code § 368 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Federal Rules of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

00153529.WPD

Title 42, United States Code § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 20, 21

U.S. Const., Amend. II  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 8, 13, 17, 19, 20

U.S. Const., Amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 8, 14, 15, 17

U.S. Const., Art. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

***Other Authorities***

RESTATEMENT (SECOND) OF TORTS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

00153529.WPD

# I. Overview and Relief Requested.

In this lawsuit under 42 U.S.C. § 1983, Plaintiff Connie Cardinale sues the County of Sacramento ("County"), the Sacramento County Sheriff's Department ("SCSD"), Sacramento County Sheriff Scott R. Jones ("Jones"), and Sacramento County Deputy Clinton Robinson ("Robinson"). Plaintiff alleges violations of her Second, Fourth, and Fourteenth Amendment rights. By this motion Plaintiff seeks partial summary judgment that defendants are liable under § 1983 for the violations of Plaintiff's Second and Fourth Amendment rights. F.R.Cv.P. 56(a).

This incident arises from SCSD deputies responding to Ms. Cardinale's home to assist her, after her adult son Ryan Stucky had assaulted and battered her on Christmas Day 2019. Before the deputies arrived, Ryan Stucky had fled his mother's home, taking with him Ms. Cardinale's Smith & Wesson revolver. Upon the deputies' search of her home that evening, without a warrant SCSD deputies seized Ms. Cardinale's four lawfully-owned long guns from her bedroom closet, stating they seized the firearms for safekeeping. The following day, SCSD obtained a search warrant for Ms. Cardinale's home, enabling deputies to conduct a destructive and intrusive search for virtually anything in every structure and vehicle on Plaintiff's residential lot despite the clear absence of any connection to the underlying criminal investigation. Pursuant to the overbroad warrant, deputies seized Ms. Cardinale's two remaining handguns locked in a safe – firearms the deputies knew had no connection to any crime the deputies were investigating. Except for the Smith & Wesson revolver Ryan Stucky took on December 25, none of the firearms were contraband or evidence of crime; each firearm was lawfully owned and possessed by Ms. Cardinale. Despite this and even after the conclusion of Ms. Cardinale's son's criminal case, defendants refused to return her firearms for nearly a year and half.

Defendants have taken the position that everything they did was both appropriate and in accordance with the County and SCSD's policies and practices.

By this motion Plaintiff seeks summary adjudication that (a) the seizure without

00153529.WPD

a warrant of her long guns on December 25 violated the Second and Fourth Amendments; (b) the warrant issued December 26 was overbroad in violation of the Fourth Amendment; (c) defendants' refusal to return to Plaintiff her firearms for nearly 18 months, violated both the Second and Fourth Amendments; (d) the aforementioned violations were in accordance with the custom, policy and/or practice of the County of Sacramento; and (e) Plaintiff is entitled to recover compensatory damages from defendants County and SCSD for all injuries proximately caused by defendants' constitutional violations.

**II. Undisputed Facts.**

    **A. Christmas Day.**

On Christmas Day 2019, Plaintiff Connie Cardinale, 66 years of age, invited her adult son, Ryan Stucky (age 29) into her home for a holiday dinner. Stucky suffers from schizophrenia and, unfortunately unknown to Plaintiff, had not been taking his required medication. Stucky began arguing with his mother. Without warning, he suddenly became violent. Using his hands and feet and then a wooden dowel, he struck and hit Ms. Cardinale repeatedly, seriously injuring her. Ms. Cardinale fled into her bedroom's bathroom, locked and barricaded the door. She managed to get text messages to friends seeking help. In turn, her friends called 911. Meanwhile, Ryan Stucky fled, taking with him his mother's .38 caliber Smith & Wesson revolver she had kept under her bed's pillow (but which had been exposed during the course of the assault inside her bedroom). *P*laintiff's *U*ndisputed *M*aterial *F*act ("PUMF") 1.

SCSD deputies responded. After summoning medical aid for Ms. Cardinale, the deputies searched her home. Without a warrant deputies entered Ms. Cardinale's bedroom walk-in closet and seized her lawfully acquired and owned long guns (three rifles / one shotgun): (1) Remington 870 Pump .20-caliber Shotgun, serial number RS50085H; (2) Savage 99E Bolt Action 243-caliber Rifle, serial number 1111846; (3) Ruger 10-22 Semi-Automatic .22-caliber Rifle, serial number 35754232; and (4) Winchester 270 22-caliber rifle. PUMF 2, 4.

The deputies took the firearms "for safe keeping at the North Area Station"; the deputies did not claim they seized the long guns as evidence of any type. PUMF 3, 69. The deputies seized the long guns without a warrant or consent. PUMF 5.

**B. The Day After Christmas.**

The following day (December 26), deputies returned to Ms. Cardinale's residence. The deputies found Ryan Stucky hiding inside a separate structure, a barn on the property's south side.  Not later than 4:00 p.m. that day, deputies took Ryan Stucky into custody. After arresting Ryan Stucky, the deputies found inside the barn the .38 caliber Smith & Wesson revolver Stucky took the day before. PUMF 6-8.

*After* Ryan Stucky's December 26 arrest and sometime between 6 to 6:30 p.m. on December 26, defendant Clinton Robinson, a Sacramento County Sheriff's Deputy, electronically submitted a search warrant application to the Sacramento Superior Court. PUMF 9. Other than preparing the warrant application and submitting it to the superior court, Robinson had no involvement in the incident; he never went to the scene, interviewed no one and made no observations of any type. For his information, Robinson relied solely on what other deputies told him, information acquired via queries into law enforcement databases, and what he learned  from reading the SCSD CAD dispatch log. PUMF 10. The warrant application, **Exhibit F** to ECF 45-2 (at pp. 39-52) consisted of 14 pages and did not include any police reports. PUMF 11.

Besides seeking authorization for seizing evidence regarding the December 25 assault on Ms. Cardinale, the warrant application sought authorization to search *all* structures on Ms. Cardinale's lot and *all* vehicles for, among other items,

● *all* firearms and firearms-related items (item #2);

● "Any and all financial documents tending to establish if the motive for the attempted homicide was for financial gain" (item #4);

● personal property items "tending to establish the identity of the persons in control of the premises" (such as utility and/or rent receipts, addressed envelopes; vehicle registration, keys etc.) (item #6). PUMF 36.

● "Telephone directories, address books, calendars and documents with names and addresses tending to establish the identity of friends, associates and family members of the persons in control of the premises" (item #7). PUMF 39.

● All electronic devices of any type (e.g., computers, smart phones, cameras) along with related storage media (CDs, DVDs, hard or floppy disks etc.), related literature, repair and purchase receipts, as well as authorization "to conduct a detailed search of the electronic contents of these digital storage devices through means of forensic examination" (item #8). PUMF 40.

● "Wireless electronic devices / cellular telephones and cellular telephone accessories including, but not limited to, SIM cards, and electrical cords for charging phones. Wireless / cellular telephones to include SIM cards, flash memory, and memory chips for each telephone" (item #9). PUMF 41.

● "Any and all locked safes, locked boxes, chests, etc., which could contain evidence related to the shooting" (item #10); and

● "Any and all illegal narcotics and prescription narcotics within the confines of the residence" (item #11). PUMF 34.

When Robinson submitted the warrant application, Robinson and/or his fellow deputies knew the following facts were true:

● Contrary to what he claimed in his affidavit, PUMF 12, Det. Robinson did *not* "personally observe[]" Ms. Cardinale's residence and made *no* "personal observations" regarding this incident. PUMF 10.

● The only crimes at issue arose from Ryan Stucky physically assaulting his mother Plaintiff Connie Cardinale, battering her by hitting and kicking her, and striking her with a wooden dowel. PUMF 13-14. When he assaulted his mother, Stucky did not  have in his possession a firearm; at no time did he threaten his mother or anyone else with a firearm. PUMF 15, 18. And contrary to what he stated in his affidavit, PUMF 16, Robinson knew there was no shooting. PUMF 17.

● Deputies had already arrested Ryan Stucky *and* had recovered the .38

00153529.WPD

Smith & Wesson revolver Stucky took when he fled his mother's home the day before. PUMF 31.

● There was no evidence suggesting drug-related crimes, *i.e.,* possessing, manufacturing and/or selling illegal drugs. PUMF 33. The only firearm related crime occurred after the assault when Stucky, previously convicted of a felony, fled his mother's home taking with him his mother's .38 caliber Smith & Wesson revolver she had kept under her bed's pillow. PUMF 15, 18.

● Stucky's assault on his mother did not arise from an home invasion robbery or anything similar; Stucky was in his mother's home for a Christmas dinner for just the two of them, which because of Stucky's severe mental health issues resulted in the assault and battery, *i.e.,* an incident of domestic violence (as Robinson admitted). PUMF 25-26, 33.

● Stucky assaulted his mother inside *her* home where she and only she resided, *i.e.*, Stucky did not live there. Moreover, Plaintiff was the sole witness to her son's crimes, was her home's only owner of record and the only person with control of the residence. PUMF 2, 35. Hence, Robinson and the other deputies already knew that Ms. Cardinale and only Ms. Cardinale had ownership and control of the premises.

**C. Subsequent Events And Defendants' Refusal To Release The Firearms.**

Following his December 26 arrest, Ryan Stucky was charged with violating Cal. Penal Code §§ 245(a)(4) (assault with deadly weapon other than a firearm), 368(b)(1) (infliction of serious harm on an elder), 29800(a)(1) (felon in possession of firearm) and 148(A)(1) (resisting / delaying a police officer). PUMF 61. On February 26, 2020, he pled no contest to the § 245(a)(4) charge, while the other charges were dismissed.  He was sentenced to a four year state prison term. PUMF 62. As of this writing, he is still in custody.

The day of Ryan Stucky's sentencing (2/26/20) the Sacramento district attorney's office (the prosecutor) notified SCSD to release Ms. Cardinale's property held in

connection with the criminal case. PUMF 64.

Beginning in March 2020, Ms. Cardinale, first by herself then through requests made by her attorney, made repeated requests on the SCSD and California Bureau of Firearms for the return of her firearms; the SCSD and Bureau rejected all requests unless and until Ms. Cardinale complied with state law authorizing return of firearms lawfully acquired and owned even where the firearms were wrongly seized by law enforcement. In connection with that demand, the Bureau of Firearms made a further demand Ms. Cardinale present proof that her one-time married surname of "Stucky," was in fact a surname she used over 25 years ago when she was married, and even though the Bureau already had official confirmation that Ms. Cardinale had used "Stucky" as her married name many years ago. PUMF 65-68 & 71; *see also* ECF 45-2 @ pp. 128-30 (Exhibit L - 6/12/20 letter to defendants and the Bureau of Firearms).

Defendants finally returned Plaintiff's firearms to her on June 22, 2021. PUMF 71.

**III. The December 25 Seizure Of Plaintiff's Long Guns Violated The Second and Fourth Amendments.**

The Second Amendment guaranteed Plaintiff the right to possess in her home the lawfully acquired long guns she kept in her closet as the long guns were neither contraband nor evidence of crime. PUMF 3-4, 69; *District of Columbia v. Heller*, 554 U.S. 570, 592-95 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010). Additionally, since the December 25 seizure of the long guns was without a warrant or consent, PUMF 5, the seizure was presumptively unconstitutional. *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015); *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (Property seizure without a warrant is "per se unreasonable" with "burden on [the government] to persuade the district court that [the] seizure comes 'under one of a few specifically established exceptions to the warrant requirement.' ").

Defendants cannot justify the December 25 warrantless seizures. The deputies make no claim that the rifles were contraband or evidence of crime; instead, the deputies state they took the rifles "for safe keeping." PUMF 3, 69. Hence, seizing Ms. Cardinale's

00153529.WPD

long guns was unconstitutional. *Caniglia v. Strom*, ___ U.S. ___, 141 S.Ct. 1596, 1599-00 (2021) (Without a warrant police seize homeowner's firearms after taking homeowner into custody "for a psychiatric evaluation." Lower courts justified the seizures under the Fourth Amendment's "community caretaking" exception to the warrant requirement; Supreme Court reverses, holding that the community caretaking exception cannot justify seizing firearms without consent and where the firearms were not evidence of crime or contraband).

## IV. The December 26 Warrant Was Overbroad In Violation Of The Fourth Amendment.

### A. Overbreadth - The Legal Standard.

Overbreadth "deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856-57 (9th Cir. 1991). To determine if a warrant was overbroad, a court analyzes the following:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1991) (Opinion by then-Circuit Judge Anthony Kennedy).

Explaining the *Spilotro* test, *en banc* the Ninth Circuit further held:

> The first consideration encapsulates the overarching Fourth Amendment principle that police must have probable cause to search for and seize "all the items of a particular type described in the warrant." *In re Grand Jury Subpoenas*, 926 F.2d at 857; *see also SDI Future Health*, 568 F.3d at 702-03; *VonderAhe v. Howland*, 508 F.2d 364, 369-70 (9th

00153529.WPD

Cir.1974). The second and third factors are relevant to determining whether the warrant satisfies this general rule.

*Millender v. County of Los Angeles*, 620 F.3d 1016, 1024 (9th Cir. 2010) (*en banc*) *overruled on oth. grds. sub. nom.*, *Messerschmidt v. Millender*, 565 U.S. 535 (2012).[1]

Thus, though there be probable cause to search for and seize *some* items (as existed in this case[2]) and even though a judge signed off on a warrant application thereby issuing the warrant, those factors do not insulate the warrant from constitutional review. *Millender*, 620 F.3d at 1025-27 (Warrant authorizing seizure of *all* firearms when police knew that the only firearm involved in crime was a " 'black sawed off shotgun with a pistol grip,' " was overbroad in violation of the Fourth Amendment.).

**B. The Warrant Was Overbroad.**

Deputy Robinson, the warrant's affiant, had no first hand knowledge of the

---

[1] In *Messerschmidt*, the Supreme Court held that the deputy who swore out the affidavit seeking seizure of all firearms, had qualified immunity on the *second* prong: law not clearly established as of the search date (November 4, 2003).

Should defendants argue the Supreme Court's *Messerschmidt* opinion rejected the Ninth Circuit's *en banc* holding that the warrant there was overbroad, the argument is meritless. As District Judge Dean Pregerson (the *Millender* trial judge) stated in a post-*Messerschmidt* ruling: "The Supreme Court did not reverse the holding by this court and the Ninth Circuit that the warrant was overbroad." *Estate of Millender v. County of Los Angeles*, 2012 WL 3655515, *2 (C.D. Cal. 2012) (filed 8/24/2012). "This distinction between the constitutional violation and qualified immunity for the officers is *critical*, because the Court's decision has already been cited incorrectly by the government in cases before this court, including this case. (See Defs.' Opp'n to MSA Mot. at 6 ('[T]he Supreme Court implicitly found there was probable cause for the issuance of the warrant....'). Again, the Supreme Court [in *Messerschmidt*] held *only* that the officers were entitled to qualified immunity. Thus, the Ninth Circuit's en banc holding that the warrant was unconstitutionally overbroad remains the law." 2012 WL 3655515 at *2 (emphasis in original).

[2] Plaintiff does not dispute that there was probable cause to search for and seize the wooden dowel Stucky used to assault his mother and other physical evidence connected to the assault. There was also probable cause to seize the .38 caliber Smith & Wesson revolver.

00153529.WPD

underlying incidents but instead relied on what fellow deputies told him or reported (PUMF 10); hence, the collective knowledge doctrine applies. *Illinois v. Andreas*, 463 U.S. 765, 771 n.5 (1983) ("The Illinois Court held that Labek's absence when the container was resealed by customs officers somehow made less than certain his knowledge of the container's contents. This was plain error: where law enforcement authorities are cooperating in an investigation, as here, the knowledge of one is presumed shared by all."); *United States v. Sutton*, 794 F.2d 1415, 1426 (9th Cir.1986) ("We look to the collective knowledge of all the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually makes the stop.").

Here, the deputies sought a warrant to search Ms. Cardinale's home and adjoining structures as if her residence was the scene of a "homicide" following a "shooting" involving "firearms" and which arose from or was connected to drug-related criminal activities (sales / manufacturing / distribution) at Ms. Cardinale's residence where ownership and control of the premises would be relevant. PUMF 16, 34, 49. In fact, the deputies knew (a) no firearms or other weapon of any type was used in the assault on Ms. Cardinale other than a wooden dowel; (b) Stucky was the only suspect, he acted alone, had no accomplices and was likely motivated by his mental illness (schizophrenia); (c) there was no evidence or suspicion of any illegal drug activity of any type at Ms. Cardinale's residence; (d) Ms. Cardinale was the lawful owner of firearms that had no connection of any type to Stucky's assault on his mother; (e) the only firearm-related offense was Stucky taking, upon fleeing his mother's house, a specifically identified (by make, model and serial number) handgun lawfully owned by Ms. Cardinale, thus giving rise to crimes of possible theft and felon in possession of a firearm; and (f) deputies recovered that handgun *before* Robinson submitted his warrant application to the superior court. PUMF 14, 15, 20, 31, 33, 35.

Thus, the SCSD deputies had no "probable cause to search for and seize 'all the items of a particular type described in the warrant,' " to wit item #2 (all firearms and

00153529.WPD

firearms related items); item #4 ("Any and all financial documents etc. tending to establish if the motive for the attempted homicide was for financial gain"); item #6 (Personal property items "tending to establish the identity of the persons in control of the premises"); #7 ("Telephone directories, address books, calendars and documents with names and addresses" etc.); #8 and #9 (Electronic devices of any type such as computers, smart phones, cameras along with related storage media etc.); #10 (safes, locked boxes, chests, etc. "which could contain evidence related *to the shooting*"); and #11 ("Any and all illegal narcotics and prescription narcotics within the confines of the residence.").

Furthermore – and putting aside that the deputies had already retrieved, when Robinson submitted the warrant application, the Smith & Wesson revolver Stucky took the day before (PUMF 31) – on item #2 (firearms) there was only probable cause for seizing one specifically described firearm – the revolver Stucky took December 25 and which *on that same day* the deputies knew was "a .38 caliber Smith & Wesson 642 (serial #CPR8043)." PUMF 20. Thus, by obtaining a warrant for seizing *all* firearms and related items when the deputies had identified by make, model and serial number the only firearm connected to an underlying crime, the deputies violated the Fourth Amendment. *Millender v. County of Los Angeles*, 620 F.3d at 1025-27 (Warrant authorizing seizure of *all* firearms when police knew that the only firearm involved in the underlying crime was a " 'black sawed off shotgun with a pistol grip,' " violated the Fourth Amendment.[3]).

**V. Defendants' Refusal For Over A Year To Return To Plaintiff Her Firearms Violated Both The Second And Fourth Amendments.**

Of Plaintiffs' seven firearms the deputies seized (four rifles and three handguns) only one – the .38 caliber Smith & Wesson revolver Stucky took on December 25 – had relevance to Stucky's criminal prosecution. PUMF 15, 69. And that relevance ended

---

[3] As previously stated, the Supreme Court's later ruling in *Millender* did not overturn the Ninth Circuit's *en banc* ruling that the warrant was overbroad in authorizing the seizure of all firearms. *See supra* fn. 1.

1   February 26, 2020, when the prosecutor directed the SCSD to release the revolver (along
2   with other property items). PUMF 63.

3          Beginning in March 2020 and continuing well into 2021, defendants refused to
4   return to Plaintiff her firearms despite Plaintiff's and her attorney's repeated requests to
5   do so. PUMF 65-68. Defendants demanded that Plaintiff first comply with Cal. Penal
6   Code § 33850 and obtain written authorization from California's Bureau of Firearms, see
7   Cal. Pen. Code § 33865. PUMF 70. Essentially, these statutes state that a law enforcement
8   agency that seizes a firearm maintain possession until its owner presents proof to the
9   Bureau of Firearms she is the firearm's owner, is lawfully entitled to possess the firearm,
10  and obtains the Bureau's written authorization for the firearm's release.[4]

11         Defendants' reliance on state law in refusing to promptly return to Ms. Cardinale
12  her firearms, was meritless. First because state law cannot, in and of itself, justify a
13  property seizure not otherwise in compliance with the federal Constitution. U.S. Const.,
14  Art. VI (Supremacy Clause); *Brewster v. Beck*, 859 F.3d 1194, 1196-97 (9th Cir. 2017)
15  (Reliance on state law that mandated a 30 day impound of the plaintiff's vehicle did not
16  equate to constitutional justification for the ongoing property seizure); *Miranda v. City*
17  *of Cornelius*, 429 F.3d 858, 864-65 (9th Cir. 2005) ("city ordinance and state statute does
18  not, in and of itself, determine the reasonableness of the seizure under the Fourth
19  Amendment").

20

---

21         [4] In relevant part subdivision (a) of § 33850 states "Any person who claims title to
22  any firearm, ammunition feeding device, or ammunition that is in the custody or control
    of a court or law enforcement agency and who wishes to have the firearm, ammunition
23  feeding device, or ammunition returned shall make application for a determination by the
24  Department of Justice as to whether the applicant is eligible to possess a firearm,
    ammunition feeding device, or ammunition." Subsections (1) through (6) to subsection
25  (a) specifies the information the firearm owner must provide. Once the Department of
26  Justice receives the completed application and determines the firearm owner is entitled
    to the firearm, the Department provides the owner with "written notification" stating she
27  is lawfully entitled to the firearms, an authorization the owner then presents to agency to
28  reclaim her firearm. Cal. Pen. Code § 33865.

Second, defendants knew that Ms. Cardinale was the firearms' owner. PUMF 19, 63; Cal. Evid. Code § 637 ("The things which a person possesses are presumed to be owned by him."); § 638 ("A person who exercises acts of ownership over property is presumed to be the owner of it."). Defendants also knew that with the exception of the Smith & Wesson revolver Stucky took on December 25, 2019, none of the firearms were evidence of any crime, and none constituted contraband. PUMF 3, 69. And as to the Smith & Wesson revolver, defendants knew its relevance for the criminal charge of violating Cal. Pen. Code § 29800(a)(1) (felon in possession of a firearm) ended February 26, 2020. PUMF 64.

Because the plain text of the Second Amendment guaranteed Ms. Cardinale her constitutional right to possess in her home the seven firearms, *District of Columbia v. Heller*, 554 U.S. at 592-95; *McDonald v. City of Chicago*, 561 U.S. at 778, it is *defendants'* burden to justify their refusal to return to Ms. Cardinale her firearms:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Konigsberg*, 366 U. S., at 50, n. 10.

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111, 2129-30 (2022).

Defendants cannot carry that burden. Historically, background investigation for firearm possession are triggered by either a person's decision to acquire a firearm, or there is a reason to believe a person should not be allowed to acquire or possess a firearm. In both instances there is a legitimate reason for the investigation – is the person competent and fit to possess a firearm? In the present case, neither reason existed as the demanded §§ 33850 *et seq.* investigation was triggered solely by ***defendants'*** unconstitutional seizure and retention of firearms Plaintiff lawfully acquired and lawfully possessed *in her home*. That is, defendants knew Ms. Cardinale was the firearms' lawful

owner and was lawfully entitled to possess all of them, firearms defendants had either wrongfully seized (the rifles seized December 25 and the two handguns seized December 26) and were wrongfully withholding. *See also Frein v. Pennsylvania State Police*, 47 F.4th 247, 253-56 (3rd Cir. 2022) (Applying *Bruen's* analytical framework, Third Circuit holds that defendants' ongoing refusal to return to plaintiffs their firearms the police took from plaintiffs' home violated the Second Amendment since the police admitted plaintiffs lawfully possessed the firearms, and admitted the firearms were not contraband nor evidence of crime.); *Snitko v. United States*, 2021 WL 3139706 @ *2 (C.D. Cal. 2021) (Pursuant to a warrant the government seized cash belonging to the plaintiff but later admitted that the cash was not contraband or implicated in criminal activity. Relying on *Brewster v. Beck*, district court holds that "the Fourth Amendment [was] implicated by the Government's delay in returning seized property, irrespective of the Government's initial basis for seizing the property," and ordered that the government return the cash to its owner.).

**VI. The Entity Defendants Are Liable For The Constitutional Violations.**

"A local government entity is liable under § 1983 when 'action pursuant to official municipal policy of some nature cause[s] a constitutional tort.' " *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1473-74 (9th Cir.1992) and citing *Monell v. New York Dept. Of Soc. Servs.*, 436 U.S. 658 (1978)). Consequently, the "policy 'need only cause (the) constitutional violation; it need not be unconstitutional *per se*.' " *Chew v. Gates*, 27 F.3d 1432, 1444 & n.12 (9th Cir. 1994) (*quoting Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir.1992)).

Here, defendants admit all conduct concerning this case – seizing Ms. Cardinale's long guns for safekeeping; the preparation, procurement and execution of the overbroad search warrant and affidavit; the seizure of Ms. Cardinale's handguns; and the refusal to return Ms. Cardinale's firearms until June 2021 – has been pursuant to the policy, custom, practices and training of the Sacramento County Sheriff's Department. PUMF Nos. 72-87. Thus, the municipal defendants' § 1983 liability has been established as a matter of

00153529.WPD

law. *Fairley v. Luman*, 281 F.3d 913, 918 (9ᵗʰ Cir. 2002).

## VII. Defendants Are Liable For All Damages Proximately Caused By Their Constitutional Violations.

In *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1089 (9th Cir. 2011), the Ninth Circuit held that traditional tort principles in holding the § 1983 defendants liable for injuries proximately caused by the execution of a search warrant: "Defendants are liable for any constitutional injuries the Bravos may have suffered as a 'natural consequence()' of the judicial deception." " 'If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.' " (*quoting with approval* RESTATEMENT (SECOND) OF TORTS)).

## VIII. Conclusion.

For the foregoing reasons the Plaintiff's motion should be granted.

DATED: June 2, 2023

**DONALD W. COOK**
Attorney for Plaintiff

By_____
                Donald W. Cook

00153529.WPD