**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444; (213) 252-0091 facsimile
E-mail: manncooklaw@gmail.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNIE A. CARDINALE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>XAVIER BECERRA, an individual sued in his official capacity only; SCOTT R. JONES, an individual sued in his official and individual capacities; COUNTY OF SACRAMENTO, a governmental entity; SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, a public entity; CLINTON ROBINSON (#305), an individual sued in his official and individual capacities; and Does 1 through 20, all sued in their individual capacities,<br><br>Defendants. | Case No. 2:20-cv-1325-MCE-CKD<br><br>**PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: Under submission<br>Time: N/A<br>Ctrm: 7 |

## I. Overview.

Defendants' opposition is noteworthy for (a) what it never addresses and thus implicitly concedes, (b) ignoring controlling precedents on Plaintiff's Second and Fourth Amendment claims; (c) misstating the law on entity liability, and (d) falsely claiming that Ryan Stucky's violent assault on his mother was a crime of violence *involving a firearm*. Interspersed with these claims is defendants' assertion (frequently asserted in ECF 50-1, defendants' response to Plaintiff's separate statement of facts) that the only knowledge which matters is Det. Robinson's (the search warrant's affiant). That last point is contrary to the collective knowledge holdings of *Illinois v. Andreas*, 463 U.S. 765, 771 n.5 (1983) and *United States v. Sutton*, 794 F.2d 1415, 1426 (9th Cir.1986), cases defendants do not acknowledge let alone explain why they are inapplicable.

## II. Defendants' Opposition Does Not Dispute That The Search Warrant Was Overbroad As To Items 4, 6, 7, 8, 9, 10, 11 And The Unnumbered Request Concerning Vehicles.

Of the nine property items for which Plaintiff contends the deputies did not have probable cause to search and seize, defendants' opposition argues or suggests probable cause for only one of the challenged property items: item no. 2 (involving firearms).[1]

---

[1] Although numbered 1 through 11, there was no property item no. 5. Additionally, there was an unnumbered request covering vehicles. Hence, the warrant application identified a total of 11 property items to search, ten of which were numbered. Of these 11 property items, Plaintiff does not dispute the deputies had probable cause for searching for and seizing item nos. 1 and 3 – physical evidence related to Ryan Stucky's assault on his mother (*see* ECF 45-2 @ pp. 40-41). Hence, Plaintiff's Rule 56 motion challenges as overbroad only the following nine property items: no. 2 (firearms and related items); no. 4 (financial records); no. 6 (items establishing the identity of the Orangevale homeowner); no. 7 (records of names and addresses of persons associated with the homeowner); no. 8 (digital storage devices, e.g., computers, hard drives and the like); no. 9 (cell phones, smart phones and their related devices such as memory cards, cords, chargers); no. 10 (locked safes, boxes and other storage containers); no. 11 (legal and illegal narcotics); and the unnumbered request to search *and* seize all vehicles at the Orangevale address. *See* ECF 45-2 @ pp. 41-42.

Aside from item no. 2 (firearms category) defendants' opposition presents *nothing* establishing "probable cause" to search for and seize the remaining eight categories of property items (nos. 4 - financial records; no. 6 - identity of the Orangevale homeowner; no. 7 - identities of persons related to the homeowner; no. 8 - digital storage devices; no. 9 - cell phones, smart phones etc.; no. 10 - locked safes, boxes and other storage containers; no. 11 - legal and illegal narcotics; and the unnumbered request for searching and seizing all vehicles). Defendants make no effort to explain probable cause for searching for illegal narcotics, or the Orangevale residence's homeowner records, or Ms. Cardinale's financial records, computers, smart phone etc., or Ms. Cardinale's address books or contact records; nor do defendants argue that these items have any connection to Ryan Stucky's crimes.

Defendants were obligated to establish "probable cause" for every one of the nine challenged property items. *In re Grand Jury Subpoenas*, 926 F.2d 847, 857 (9th Cir. 1991) ("We have pointed out that probable cause must exist to seize all the items of a particular type described in the warrant.") (*citing United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)). Defendants utterly fail to offer any justification for searching and seizing eight of the nine categories Plaintiff challenged in the warrant application.

**III. Defendants Have Not Shown There Was Probable Cause For Seizing *All* Firearms And Related Items (Item No. 2).**

As shown most clearly by Deputy Allgeier's Report (Exhibit B to ECF 45-2) the *only* firearm related crime concerned Ryan Stucky taking his mother's .38 caliber Smith & Wesson revolver (serial #CPR8043) when he fled her home, thus a possible Cal. Pen. Code § 29800(a)(1) violation (felon in possession of a firearm) and theft. And because the deputies had identified *on December 25* the exact firearm Ryan Stucky took (ECF 45-2 @ pp. 19-20 [CAD report #19-455580]) the deputies did *not* have probable cause to seize any other firearm, be they Ms. Cardinale's four long guns seized without a warrant on December 25, or the two handguns locked in her safe and seized the following day December 26. *Millender v. County of Los Angeles*, 620 F.3d 1016, 1025-17 (9th Cir.

2010) (*en banc*) *overruled on oth. grds. sub. nom.*, *Messerschmidt v. Millender*, 565 U.S. 535 (2012).[2]

It is significant that even though Plaintiff's moving papers cited the Ninth Circuit's *en banc Millender* decision as controlling on the overbreadth challenge to item no. 2, *not once* do defendants dispute *Millender's* application to this case. Indeed, defendants' opposition does not even mention the *Millender* rulings.

**IV. Defendants Have Not Shown That Their Refusal To Promptly Return To Plaintiff Her Firearms, Was Constitutional.**

In her moving papers Plaintiff's argument was simple. Of the seven seized firearms (four long guns; three revolvers) only one – the specifically identified Smith & Wesson revolver Ryan Stucky took on December 25 – had some connection to a crime, and a non-violent one at that. Because the remaining six firearms had no connection to *any* crime *and* were not contraband (which defendants admit[3]), and because the prosecuting attorney disclaimed any further interest in the Smith & Wesson revolver as of February 26, 2020, all firearms should have been promptly released to Ms. Cardinale; defendants' failure to do so violated both the Second and Fourth Amendments. ECF 45 at pp. 17-20 (Part V).

So how do defendants respond to the Supreme Court decisions that Plaintiff contended mandate a ruling that defendants' continuing withholding of Ms. Cardinale's firearms violated the Constitution? Defendants say *nothing*. Defendants do not explain how the holdings of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111, 2129-30 (2022) (Second Amendment places heavy burden on the government to justify denying a person his right to lawfully possess legal firearms) or *Caniglia v. Strom*, 141 S.Ct. 1596, 1599-00 (2021) (Fourth Amendment does not authorize police to seize legal firearms that are not evidence of crime under a "community caretaking" exception to the

---

[2] As explained in Plaintiff's Rule 56 motion, the Ninth Circuit's holding of the constitutional violation was *not* disturbed by the Supreme Court's later ruling. ECF 45 filed 6/2/23 at page 15 & fn. 1 & page 17.

[3] See ECF 50-1, defendants' responses to fact nos. 3 and 69.

00156689.WPD

warrant requirement) are inapplicable. Indeed, defendants do not even cite *Bruen* or its mandated paradigm for analyzing a claim of a Second Amendment. *Cf. United States v. Alaniz*, ___ F.4th ___ (9th Cir. 2023) (filed 6/13/23) (Applies *Bruen* analysis for determining if sentencing enhancement "clearly comports with a history and tradition of regulating the possession of firearms." Slip Opinion at 9-10.).[4]

Defendants instead falsely suggest that Ryan Stucky tried to kill his mother by using a gun (e.g., ECF 50 @ 8:23) when, in fact, the deputies knew that Ryan Stucky committed no assault, whether actual or threaten, involving or connected to a firearm.

And despite Ms. Cardinale's Second *and* Fourth Amendment rights to reclaim her firearms, defendants repeat their earlier reliance on state law (ECF 50 @ 12:9-13:26). Such pigheaded reliance on state authority to defeat federal constitutional claims without explaining how *Bruen* and *Caniglia* are inapplicable, and further explaining how the Ninth Circuit's decisions in *Brewster v. Beck*, 859 F.3d 1194, 1196-97 (9th Cir. 2017) and *Miranda v. City of Cornelius*, 429 F.3d 858, 864-65 (9th Cir. 2005) do not apply, is astounding. Both *Brewster* and *Miranda* held that the police holding a person's property without a warrant or exception to the warrant requirement, violated the Fourth Amendment *even though the ongoing seizure was justified or mandated by state law*. Meanwhile, defendants' admission that they seized the four long guns for "safekeeping" is directly contrary to the Court's holding in *Caniglia*, which means according to the Third Circuit, defendants' year-plus refusal to return to Ms. Cardinale her long guns *and* the handguns seized pursuant to the warrant, violated *Bruen*. *Frein v. Pennsylvania State Police*, 47 F.4th 247, 253-56 (3rd Cir. 2022).

---

[4] Regarding *Caniglia*, defendants suggest "the need to 'render emergency assistance to an injured occupant or to protect an occupant from imminent injury,'" makes *Caniglia* inapplicable. ECF 50 @ 8:16-18. What defendants ignore, however, are the facts – in this case there was *no* claim the deputies needed to seize the firearms because of any threat of "imminent injury." And even if there was such a threat, that threat ended when Ryan Stucky was taken into custody on December 26 at which point Fourth Amendment justification for the ongoing seizures ended. *Brewster v. Beck*, *supra*.

Even though Plaintiff cited and explained these cases in her moving papers, defendants' opposition argues as if these Supreme Court and Ninth Circuit decisions were never decided while their underlying legal principles (e.g., state law must yield to federal constitutional guarantees, see U.S. Const. Art. VI) are non-existent!

Defendants' argument that they did not prohibit Plaintiff "from purchasing, possessing, or utilizing [replacement] firearms" and thus there is no burden on her constitutional rights, ECF 50 @ 8:2-4, is frivolous. Plaintiff had a constitutional right to possession of the firearms *defendants* seized. Were defendants' argument correct, then the Supreme Court got it wrong in *Caniglia*. Likewise, the Third Circuit missed the boat when it held in *Fruin* that the police refusal to promptly return the firearms to their owners, violated the Second Amendment as interpreted by *Bruen*. Also wrongly decided under defendants' logic, were the Ninth Circuit decisions in *Brewster* and *Miranda*. In both those cases the police seized and impounded the plaintiffs' vehicles. Hence, applying defendants' reasoning the vehicle impoundments were constitutional since state law did not prevent the plaintiffs "from purchasing, possessing, or utilizing" other vehicles.

**V. The Entity Defendants Are Liable For The § 1983 Violations.**

Defendants admit that the seizure of Ms. Cardinale's firearms, the procurement and execution of the warrant, and defendants' later refusal to return to Ms. Cardinale her firearms unless she first complied with state law, were all pursuant to the entity defendants' custom, policy or practice. See ECF 50-1 filed 6/30/23 @ pp. 30-33 (defense responses to fact nos. 70 through 87). But, defendants' claim, Plaintiff has not established the entity defendants' *Monell* liability because she has not shown that defendants' custom, policy or practice reflected "deliberate indifference." ECF 50 @ pp. 6-7.

Defendants are wrong. They confuse a policy directing officers to take certain actions – officers doing what they are told and trained to do – with a policy of omission, *i.e.*, officers not taking action because of a failure to train.

Deliberate indifference is required only if Ms. Cardinale's § 1983 claim against the

00156689.WPD

entities is one of failure to train or omission. In *Monell v. New York City Dept. Of Soc. Servs.*, 436 U.S. 658 (1978), the evidence establishing municipal liability was a "policy [that] compelled pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons." 436 U.S. 660-61. There was no requirement that the plaintiffs show deliberate indifference in addition to the policy or custom. 436 U.S. at 690-91 (Municipality is liable where violation occurs as a result of "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."). *See also Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (Because municipal policy authorized use of deadly force in violation of *Tennessee v. Garner*, 471 U.S. 1 (1985), municipality was liable as a matter of law).

Eleven years after *Monell*, the Supreme Court in *City of Canton v. Harris*, 489 U.S. 378 (1989) cut a different path for municipal liability, for situations where the claim is one of "inadequate training" or "failure to train." For a § 1983 claim based on "inadequacy of police training," municipal liability arises "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. at 388.

The *Canton* deliberate indifference standard came about because unlike *Monell*, in a failure to train case the wrongful act causing injury may be the result of mere negligence or occasional mistakes by adequately trained officers. A failure to act by itself should not trigger § 1983 municipal liability; rather, the failure must be the result of a conscious effort by the municipality to deny training where such training is clearly needed. Otherwise, the "standard of fault would result in *de facto respondeat superior* liability on municipalities — a result [] rejected in *Monell*." 489 U.S. at 392.

*Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994), illustrates the different standards under *Monell* and *Canton*, and their application. In finding that the unconstitutional act (dog biting the suspect) was pursuant to municipal policy, *Chew* held:

> Under the *Monell* doctrine, Chew may recover from the city if his

injury was inflicted pursuant to city policy, regulation, custom, or usage. [*Monell* citation.] City policy "need only cause [the] constitutional violation; it need not be unconstitutional per se." [Citations omitted.] City policy 'causes' an injury where it is 'the moving force' behind the constitutional violation, *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-38, or where "the city itself is the wrongdoer." *Collins*, ___ U.S. at ___, 112 S.Ct. at 1067.

> There is little doubt that a trier of fact could find that Chew's injury was caused by city policy. In the district court, the city conceded, for purposes of summary judgment, the truth of Chew's contention that departmental policy authorized seizure of all concealed suspects — resistant or nonresistant, armed or unarmed, violent or nonviolent — by dogs trained to bite hard and hold. Construing city policy as the appellee concedes we must, it doubtless could be found to be the "moving force" behind Chew's injury. Bunch released [the police dog] because his superiors instructed him that he was authorized to do so under the circumstances of Chew's case. The instructions were based on what we assume to be city policy. Accordingly, we must reverse the district court's grant of summary judgment in favor of the City of Los Angeles.

27 F.3d at 1444-45 (footnote 12 omitted).

*Chew* then explained that the foregoing *Monell* proof was separate from *Canton's* "deliberate indifference:"

> Further, even if we were to accept the city's argument that no jury could find that departmental canine policy was officially sanctioned, municipal liability could be found under the "deliberate indifference" formulation of *Monell* liability. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). In order to accept the city's contention that departmental canine policy was not officially sanctioned, we would have to find that the city itself had no policy regarding

the proper use of canine force, or, at best, a policy of vesting complete discretion regarding the use of the canines in the dogs' handlers. . . . [A] failure to adopt a departmental policy governing their use, or to implement rules or regulations regarding the constitutional limits of [using dogs to find and bite suspects] evidences a "deliberate indifference" to constitutional rights.

27 F.3d at 1445.

Also compare Ninth Circuit Model Civil Jury Instruction 9.5 (municipal liability under § 1983 based on policy, custom or practice – no requirement of deliberate indifference) with Ninth Circuit Model Civil Jury Instruction 9.8 (municipal liability under § 1983 based on failure to train – deliberate indifference required). *See also Gant v. County of Los Angeles*, 765 F.Supp.2d 1238, 1263 (C.D. Cal. 2011) (Since the Torrance entity defendants "admitted that the detention of Gant was in accordance with and pursuant to official policy," defendants could be held liable under *Monell*; no showing of deliberate indifference was required).

Here, since the entity defendants' admit their deputies' actions were pursuant to the entity defendants' custom, policy or practice, that suffices to establish the entity defendants' § 1983 liability. *Monell*, *supra*; *Chew*, *supra*; *Gant*, *supra*.

**VI. Sheriff Jones' Liability Is Not At Issue On Plaintiff's Motion.**

Plaintiff's Rule 56 motion seeks no ruling regarding Sheriff Jones' liability; the motion seeks only a § 1983 liability finding as against the two entity defendants, the County of Sacramento and its Sheriff's Department. ECF 45 filed 6/2/23 @ 3:6-16 (¶¶3-6). Hence, defendants' argument on defendant Jones' non-liability (ECF 50 @ 7:4-19) is a red herring.

///
///
///
///

**VII. Conclusion.**

For the foregoing reasons the Plaintiff's motion should be granted.

DATED: July 10, 2023

                                **DONALD W. COOK**
                                Attorney for Plaintiff

By _____
                Donald W. Cook